IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE HILB GROUP OF MARYLAND, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TARA SMITH, and HARRISON BENEFIT SERVICES, LLC d/b/a BLUEPRINT BENEFITS GROUP, <br><br> Defendants. | No. 4:23-CV-01978 <br><br> (Chief Judge Brann) |

**MEMORANDUM OPINION**

MAY 15, 2024

Currently pending before the Court is Plaintiff The Hilb Group of Maryland, LLC's ("THG-MD") Motion for a Temporary Restraining Order against Defendant Harrison Benefit Services, LLC d/b/a Blueprint Benefits Group ("Blueprint").[1] For the reasons below, THG-MD's Motion is granted in part pending a hearing.

**I.     RELEVANT FACTUAL BACKGROUND**

THG-MD is an insurance broker and administrator which offers various insurance products and related consulting services to commercial and individual consumers.[2] Defendant Tara Smith was employed by Greenwald Berk Insurance

---

[1]     Mot. TRO, Doc. 52.
[2]     Am. Verified Compl., Doc. 40 ¶ 16.

Agency, which was purchased by THG-MD in July 2019.[3] Blueprint is a competitor of THG-MD.[4]

In September 2023, while still employed by THG-MD, Smith began working with Blueprint to divert customers from THG-MD.[5] As part of these conversations, Smith forwarded her Employment Agreement to Blueprint for the purposes of obtaining advice regarding the enforceability of the Agreement's restrictive covenants.[6] In October 2023, she set an appointment for her and a Blueprint employee to meet a THG-MD client for the purposes of diverting business from THG-MD to Blueprint.[7] Smith and Blueprint were successful, and Smith and a Blueprint employee exchanged celebratory text messages the evening following the meeting.[8]

During the month of October 2023, Smith had also been collecting and emailing to herself and a Blueprint employee extensive amounts of THG-MD confidential information for the purposes of stealing THG-MD customers.[9] "The collected and forwarded information included:

- Customer contact information;

---

[3]  *Id.* ¶ 6.
[4]  *Id.* ¶ 7.
[5]  *Id.* ¶ 48.
[6]  *Id.* ¶ 49.
[7]  *Id.* ¶¶ 56-57.
[8]  *Id.* ¶ 58.
[9]  *Id.* ¶¶ 59-69.

- Certificates of insurance and benefits summaries, reflecting the benefits various customers had purchased;

- Detailed benefits pricing information (including both current and anticipated renewal rates) for various health plan offerings and other employee benefits purchased by THG-MD customers;

- Customer policies, renewals, and amendments; and

- Spreadsheets detailing customers' employee benefit elections."[10]

Then, on October 31, 2023, Smith notified THG-MD of her resignation via the submission of a resignation letter drafted by Blueprint's attorney.[11] Within two weeks of her departure, twelve customers serviced by Smith ended their relationship with THG-MD.[12] Between November 13, 2023 and the filing of THG-MD's Amended Complaint on April 4, 2024, four more customers left THG-MD.[13] On December 15, 2023, the Court entered an Order, granting THG-MD's and Smith's joint motion for a stipulated consent injunction.[14] The injunction broadly enjoins Smith from, on behalf of herself, or any other entity, attempting to induce customers to cease doing business with THG-MD, using or disclosing any Confidential Information she may have retained, and directs the parties to agree to a protocol for

---

[10] *Id.* ¶ 61.
[11] *Id.* ¶¶ 70-72.
[12] *Id.* ¶ 75.
[13] *Id.*
[14] Doc. 23.

the forensic examination of Smith's personal electronic devices, email accounts, and storage accounts.[15]

Notably, Smith did not join Blueprint as an employee. However, the nature of the relationship between Smith and Blueprint remains a mystery to the Court and, seemingly, counsel for the parties. On May 14, 2024, the Court held a telephonic status conference with counsel of record on THG-MD's Motion, during which counsel for Smith advised the Court that she had, as she represented to colleagues at THG-MD at the time, left THG-MD for a position at one of THG-MD's clients, Trion Industries.[16] Counsel for Blueprint advised that Smith and Blueprint were familiar with each other due to working in the same industry, but that there was no "W-2 relationship" between the two.

Left unsaid by counsel is that there is a massive gulf between professional familiarity and employer-employee relationships. The Verified Amended Complaint includes specific allegations regarding communications between Blueprint and Smith while she was still a THG-MD employee. Those communications include Blueprint offering legal advice to Smith regarding her employment agreement,[17]

---

[15]  *Id.*
[16]  Am. Compl. ¶ 74. Counsel indicated that Smith also works at a financial institution.
[17]  *Id.* ¶¶ 49, 52.

several in person meetings,[18] actively working with Blueprint to solicit THG-MD customers,[19] and sending THG-MD customer information to Blueprint.[20]

Counsel was also unable to offer any legitimate purpose for Smith's actions. When asked what legitimate purpose there could be for Smith to send emails of THG-MD customer information to Blueprint, counsel disputed the premise, suggesting that the information was not confidential, did not belong to THG-MD, or that it was Smith's right to do so. But when pressed on specifics, counsel could offer none. Counsel for Smith was unable to explain why it would not be improper for her to meet with THG-MD clients on Blueprint's behalf while still a THG-MD employee. Counsel for Blueprint, suggesting that Smith may have been acting on her own as a disgruntled THG-MD employee and any benefit realized by Blueprint was an unintended consequence, ignored the specific allegations and evidence of Blueprint playing an active role in Smith's efforts.

## II. PROCEDURAL BACKGROUND

THG-MD initiated this litigation with the filing of a Verified Complaint bringing various claims related to the alleged theft of trade secrets and a motion for an injunction against Smith on November 30, 2023.[21] Following telephonic status

---

[18]  *Id.* ¶ 51.
[19]  *Id.* ¶¶ 56-58.
[20]  *Id.* ¶ 59. *See also e.g.*, Am. Compl. Exhs. F, G, I, Docs. 40-7, 40-8, 40-9 (emails from Smith to Blueprint).
[21]  Compl., Doc. 1; Mot. for Inj., Doc. 3.

conferences with counsel of record, the Court scheduled a hearing on THG-MD's motion for January 5, 2024.[22] In the days following the telephonic status conference, the parties were able to agree to a consent injunction, obviating the need for a hearing.[23] Smith subsequently filed an Answer to the Complaint,[24] and discovery commenced.

On April 4, 2024, THG-MD filed a Verified Amended Complaint, adding Blueprint as a Defendant.[25] In the Amended Complaint, THG-MD asserts seven claims for relief: Breach of Contract (Count I), Misappropriation of Trade Secrets Under the Pennsylvania Uniform Trade Secrets Act (Count III), and Breach of Fiduciary Duty (Count IV) against Smith; Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (Count II), Tortious Interference with Business Relations (Count V), and Conversion (Count VI) against both Smith and Blueprint; and Tortious Interference with Contract (Count VII) against Blueprint. Smith filed an Answer on April 25, 2024 in which she alleged a Counterclaim seeking relief under the Age Discrimination in Employment Act.[26]

On April 26, 2024, Blueprint filed a Motion to Dismiss or, in the alternative, for a more definite statement of and to strike the claims against it.[27] On May 8, 2024,

---

[22] Docs. 8, 18, 21.
[23] Docs. 22-23.
[24] Doc. 26.
[25] Am. Compl., Doc. 40.
[26] Smith Ans. and Countercl., Doc. 45.
[27] Mot. to Dismiss, Doc. 46.

THG-MD filed a Motion for a Temporary Restraining Order or, in the alternative, a Preliminary Injunction against Blueprint. On May 10, 2024, Blueprint filed its brief in support of its Motion to Dismiss.[28] On May 14, 2024, the Court held a telephonic status conference with counsel of record regarding THG-MD's Motion.[29]

## III. LEGAL STANDARD

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."[30] A party seeking a temporary restraining order must establish four factors: "(1) a likelihood of success on the merits, (2) the probability of irreparable harm if the relief is not granted, (3) that granting injunctive relief will not result in even greater harm to the other party, and (4) that granting relief will be in the public interest."[31] Courts use a balancing test to determine whether injunctive relief is warranted.[32] The movant bears the burden of establishing all four elements.[33]

---

[28] MTD Br., Doc. 55.
[29] May 10, 2024 Ord. Sch. TSC, Doc. 54.
[30] *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citing *Morton v. Beyer*, 822 F.2d 364, 376 (3d Cir. 1987)).
[31] *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) (citing *Frank's GMC Truck Center*, 847 F.2d at 102). "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Id.* (internal citations omitted).
[32] *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975).
[33] *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000).

## IV.   ANALYSIS

### A.   Likelihood of Success on the Merits

To show a likelihood of success on the merits, a movant need only establish a *prima facie* case demonstrating a "reasonable probability" of success;[34] they are not required to prove that success is "more likely than not."[35] Here, the Court finds that THG-MD can likely prevail on its claims that Blueprint misappropriated THG-MD's trade secrets.[36]

To prevail on a claim of misappropriation of trade secrets under the Defend Trade Secrets Act, a plaintiff must demonstrate (1) the existence of a trade secret (2) that is related to a product or service used in, or intended for use in interstate commerce, and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.[37]

To plead the existence of a trade secret, THG-MD "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such."[38] "In determining whether allegations about the identified information plausibly support its having protected

---

[34] *Issa v. School Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal quotations omitted).
[35] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n. 3 (3d Cir. 2017) (internal quotations omitted).
[36] As a finding of likelihood of success on the trade secret claim is sufficient to warrant a TRO, the Court need not address THG-MD's tortious interference claims at this time.
[37] *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).
[38] *Id.*

status as a trade secret, courts consider whether the owner of the information 'has taken reasonable measures to keep . . . [it] secret' and whether the 'information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]'"[39]

THG-MD avers that it "has expended and continues to expend considerable resources acquiring and developing this confidential and trade secret information and the relationships its employees cultivate with customers using this information."[40] Among these measures are maintaining the relevant information on password-protected computer systems, limiting access to the information on a "need to know" basis, and requiring employees to enter into agreements containing confidentiality and other restrictive covenant obligations.[41] Therefore, the Court finds that THG-MD has taken reasonable measures to keep the information secret.

The Court also finds that the information derives independent economic value. Courts have repeatedly held that the information at issue—customer lists, certificates of insurance and benefits summaries, detailed pricing information, customer

---

[39] *Id.* (quoting 18 U.S.C. § 1839(3)).
[40] Am. Compl. ¶ 33.
[41] *Id.* ¶ 35.

policies, and customer benefit elections[42]—are precisely the sort of information for which trade secret protection was created.[43]

During the status conference, counsel for Blueprint suggested that at least some of the information it received from Smith was public information that could be found on insurance carriers' websites. However, that overlooks the possibility, if not probability, that much of the information is not publicly available. That Blueprint appears to have gone through some effort to secure the information at issue practically confirms as much. Indeed, the information described in the Complaint goes well beyond the sort of customer lists and pricing information that "are readily obtainable from other sources."[44]

The Court also finds that the Amended Complaint adequately describes the trade secrets at issue. In addition to the description of the collected and forwarded information discussed above, attached as exhibits to the Amended Complaint are specific communications which include specific files Smith shared with Blueprint. The description of the trade secrets in the Amended Complaint and the reference to

---

[42] *Id.* ¶ 61.
[43] *E.g.*, *A.M. Skier Agency, Inc. v. Gold*, 747 A.2d 936, 940 (Pa. Super. 2000); *Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 Fed. Appx. 962, 965 (3d Cir. 2010) *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 540 (W.D. Pa. 2018)).
[44] *Cf. Curtis 1000 v. Suess*, 843 F. Supp. 441, 451 (C.D. Ill. 1994) (holding that customer lists and pricing information available from public sources are not trade secrets).

specific documents is more than sufficient to "sufficiently identify and describe the information [THG-MD] claims as a trade secret."[45]

Having found that THG-MD has established that the relevant information rises to the level of protectable trade secrets, the Court turns to the issue of misappropriation. On that front, the Third Circuit has held that conduct virtually identical to that alleged here is sufficient.[46]

### B.    Irreparable Harm

The second factor for a temporary restraining order requires "a showing that the plaintiff will suffer irreparable harm if an injunction is not issued."[47] "Irreparable harm 'must be of a peculiar nature, so that compensation in money alone cannot atone for it.'"[48] During the status conference, the Court inquired as to the ability to quantify the harm THG-MD would suffer absent an injunction. THG-MD allowed that lost revenue or clients are able can be quantified, and therefore may be remedied by monetary damages if it is to prevail on the merits. However, THG-MD also

---

[45] *Mallet & Co. v. Lacayo*, 16 F. 4th 364, 381 (3d Cir. 2021).
[46] *See Oakwood Laboratories LLC*, 999 F.3d at 911-12 (allegations that information was obtained despite knowledge it was protected by confidentiality agreements sufficient to state claim for misappropriation). *See also Magnesita Refractories Co. v. Tianjin New Cent. Refractories Co., Ltd.*, No. 1:17-CV-1587, 2019 WL 1003623, at *9-10 (M.D. Pa. Feb. 28, 2019) (misappropriation where former employee emailed trade secrets to personal email then provided to competitor).
[47] *H. v. Easton Area School Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011).
[48] *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990)).

11

explained that much of the business of an insurance broker relies on repeat and referral business streams which are not so easily quantified.

"The availability of some legal remedy does not mean such a remedy is adequate."[49] The Third Circuit has held the disclosure of trade secrets may establish immediate irreparable harm.[50] Further, THG-MD has an interest in preserving customer relationships and confidential information.[51] Beyond the mere potential loss of business is the loss of goodwill, which is a foreseeable outcome if clients come to believe that THG-MD is unable to adequately protect confidential information with which it is entrusted. The nature in which Blueprint is alleged to have counselled and encouraged Smith regarding her apparent circumvention of her Employment Agreement also "demonstrates that [Blueprint] has 'an intention to make imminent or continued use of a trade secret.'"[52]

### C. Balance of Harms

The third factor, the balance of harms, requires determining "whether granting preliminary relief will result in even greater harm to the nonmoving party."[53] "To determine which way the balance of hardship tips, a court must identify the harm to

---

[49] *TD Bank N.A. v. Hill*, 928 F.3d 259, 283 (3d Cir. 2019).
[50] *Neo Gen Screening, Inc. v. TeleChem Intern., Inc.*, 69 Fed.Appx. 550, 554–55 (3d Cir. 2003) (citing *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992)).
[51] *Mt. Productions, Inc. v. Piccola*, No. 3:22-CV-01588, 2022 WL 17242872, at *20 (M.D. Pa. Nov. 23, 2022).
[52] *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 524 (E.D. Pa. 2018) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992)).
[53] *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

be caused by the preliminary injunction against the possibility of the harm caused by not issuing it."[54]

During the status conference, Blueprint objected to THG-MD's request that Blueprint cease use of all computers and other devices which contains THG-MD's confidential information.[55] Blueprint noted that, even if it had improperly solicited and secured business from a handful of THG-MD's clients, it has hundreds of other clients that it must be allowed to serve in the interim. Precluding Blueprint from being able to use its computers would have the effect of precluding them from doing business altogether.

THG-MD responded that, if this is the case, it is a problem of Blueprint's own doing. The Court agrees.

If THG-MD's confidential information has been distributed so widely within Blueprint, it has no one to blame but itself. The Third Circuit has "often recognized that 'the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself.'"[56] Further,

---

[54] *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007) (citing *Los Angeles Memorial Coliseum Commission v. NFL*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

[55] *See* Proposed Ord., Doc. 52-1, at 2 (proposing that "Blueprint shall immediately cease use of all computers and/or electronic devices containing THG-MD confidential information provided by Smith or otherwise improperly obtained").

[56] *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)).

such widespread distribution of THG-MD's information would increase the potential harm to THG-MD accordingly.

Nevertheless, the Court will not, at this juncture, take the step of requiring Blueprint to cease use of all electronic devices which contain THG-MD's confidential information. Blueprint will be required to segregate, preserve, and not access such information, but the Court will leave the exact procedure by which that is accomplished to Blueprint in the first instance. Blueprint shall detail the procedure it implements in the certification the Court will require it to file by close of business on May 17, 2024.

### D. Public Interest

The Third Circuit has held that "there is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements."[57] The public also "has a clear interest in ensuring fair business practices and safeguarding trade secrets."[58] This case also does not involve the competing interests of employer and employee rights to hire and work for whom they please.[59] Therefore, an "extended analysis of the public interest" is unnecessary, for "extensive precedent supports an injunctive remedy where the elements of a trade secret claim are established."[60]

---

[57] *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010).
[58] *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 280 (3d Cir. 2019)
[59] *Cf. Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 525 (E.D. Pa. 2018).
[60] *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1265 (3d Cir. 1985).

such widespread distribution of THG-MD's information would increase the potential harm to THG-MD accordingly.

Nevertheless, the Court will not, at this juncture, take the step of requiring Blueprint to cease use of all electronic devices which contain THG-MD's confidential information. Blueprint will be required to segregate, preserve, and not access such information, but the Court will leave the exact procedure by which that is accomplished to Blueprint in the first instance. Blueprint shall detail the procedure it implements in the certification the Court will require it to file by close of business on May 17, 2024.

### D. Public Interest

The Third Circuit has held that "there is a generalized public interest in upholding the inviolability of trade secrets and enforceability of confidentiality agreements."[57] The public also "has a clear interest in ensuring fair business practices and safeguarding trade secrets."[58] This case also does not involve the competing interests of employer and employee rights to hire and work for whom they please.[59] Therefore, an "extended analysis of the public interest" is unnecessary, for "extensive precedent supports an injunctive remedy where the elements of a trade secret claim are established."[60]

---

[57] *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010).
[58] *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 280 (3d Cir. 2019)
[59] *Cf. Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 525 (E.D. Pa. 2018).
[60] *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1265 (3d Cir. 1985).

## V. INJUNCTION

In accordance with the above, the Court will enter an Order enjoining Blueprint from, directly or indirectly, on behalf of itself or any other individual or entity, further accessing, disclosing, or using any of THG-MD's trade secret or confidential information. Blueprint shall preserve and segregate all such information and related documentation. Related documentation includes communications regarding or including the confidential information. Such communications include, but are not limited to, communications between Smith and Blueprint, internal communications, and communications with any other third parties.

The Order so enjoining Blueprint will remain in effect until a hearing on THG-MD's Motion is held on May 28, 2024. At that that hearing, the Court will hear testimony and receive evidence from the parties in support of their respective positions. To that end, the Court briefly notes an area of potential conflict. In its Verified Complaint, THG-MD makes reference to advice Smith received from Blueprint's counsel regarding her Employment Agreement and her resignation.[61] To the extent that Smith or Blueprint intend to argue that such communications are protected by attorney-client privilege, the Court reminds them that it is their burden to establish that the relevant communication is protected.[62] The Court notes that it

---

[61] *E.g.*, Am. Compl. ¶¶ 49-52, 71-72, 88.
[62] *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014).

does not appear that there was an attorney-client relationship between Smith and Blueprint's attorney and, to the extent that any communications between Blueprint and counsel were shared with Smith, that would seem to result in waiver.[63] Accordingly, if Smith or Blueprint intends to rely on the privilege, the Court respectfully encourages them to, in their filings due May 20, 2024, establish that such communications are protected by privilege.[64]

## VI. CONCLUSION

For the foregoing reasons, Plaintiff The Hilb Group of Maryland, LLC's Motion for a Temporary Injunction is granted in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[63] *Id.* at 478.
[64] Though Defendants may not be able to anticipate every line of inquiry THG-MD may pursue at the hearing, the Court expects that they can reasonably anticipate whether they expect to assert attorney-client privilege over such communications. It is the Court's intention to ensure that the hearing does not get sidetracked due to extensive sidebars over scope of any applicable privilege. Further, to the extent that neither party reasonably foresees asserting attorney-client privilege, they need not address the matter.

16